## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| JEFFREY BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-cv-295 (TSC) |
| | ) | |
| SALLY JEWELL, SECRETARY, | ) | |
| U.S. DEPARTMENT OF INTERIOR, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Jeffrey Brown alleges race, sex, and age discrimination, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 633a (the "ADEA").  Brown claims that his supervisors at the United States Department of Interior ("DOI") denied his request to telework, denied his request to travel, and forced him to retire by transferring most of his job responsibilities to a different office.  (Compl. ¶¶ 13, 17, 21).

Defendant moves to dismiss the race and sex claims for failure to exhaust administrative remedies, and to dismiss any claims predicated on the alleged forced retirement for failure to timely appeal.  (Def.'s Mem. Supp. Mot. Summ. J. & Dismiss ("Def. Mot.") at 2).  Defendant also moves, in the alternative, for summary judgment on a variety of grounds, including that Brown did not suffer any adverse employment action, has not shown an inference of discrimination, has not demonstrated that DOI's proffered non-discriminatory reasons for its actions were pretextual, and has not shown causation for his retaliation claim.  (*Id.* at 2-3).

Upon consideration of the Defendant's motion, the response and the reply thereto, as well as the supplemental briefing ordered by the court on the question of the court's subject-matter jurisdiction over this case, and for the reasons set forth below, each of Brown's claims are dismissed.  The forced retirement claims are dismissed for lack of subject-matter jurisdiction, and Defendant's motion is granted as to the remaining claims regarding the denial of his requests to telework and to travel.

## I.        BACKGROUND

Jeffrey Brown is an African-American male who was approximately 55 years old at the times relevant to the Complaint.  (Compl. ¶ 6).  He held various positions at DOI throughout his career.  (Pl.'s Opp'n at 3-5).  At the time of the alleged discrimination, he was a GS-14 Information Technology Specialist in the Office of the Chief Information Officer, Division of IRM Governance, Bureau of Land Management, Department of Interior.  (Compl. ¶ 6).

### a.   Telework Denial and Travel Delays

In September 2008, Brown requested that he be permitted to work remotely for two days per week to reduce his commute.  (Def.'s Statement of Facts ¶ 10).  According to Brown, he could perform 80-90% of his work duties from home, and he requested telework because he primarily supervised employees on the West Coast, meaning that he often had to stay at work late.  (Compl. ¶ 8).  Laura Bell, Brown's first-line supervisor, initially approved his request. (Def.'s Statement of Facts ¶ 11).  However, the next day Bell informed Brown that her supervisor (and Brown's second-line supervisor), Scott MacPherson, had overruled her approval and denied the telework request because Brown had not provided a medical justification.  (*Id.* at ¶ 12).  After discussions between Brown and MacPherson, MacPherson indicated that he would

only approve the request for either a short duration or for a valid medical reason.  (*Id.* at ¶ 13).
Brown met neither criterion, so his request was denied.  (*Id.*).

A day after MacPherson's denial, Brown contacted the Department of Interior's Equal
Employment Opportunity ("EEO") Office and alleged that he was discriminated against based on
race and age when MacPherson denied his telework request.  (*Id.* at ¶ 14; Compl. ¶ 16).  His
complaint was assigned agency complaint number BLM-09-004.  (Def.'s Mot. Ex. A).

While his telework complaint was pending, Brown alleges that he experienced additional
incidents of discrimination when MacPherson denied two requests Brown made to travel to DOI
field offices in Oregon and Colorado.  (Compl. ¶ 17).  In October 2008, Brown received an email
from an IT manager in DOI's Portland, Oregon field office inviting Brown to travel to Portland
to review their configuration management processes.  (Pl.'s Opp'n Ex. B at 57).  Brown
submitted a travel request to MacPherson, but MacPherson allegedly never responded.  (Pl.'s
Opp'n at 9).  Brown claims that MacPherson effectively denied the request (*id.*); Defendant
claims the trip was merely delayed because of reorganization in the Portland field office.  (Def.'s
Mot. at 2-3).  Either way, it is undisputed that Brown eventually traveled to Portland in July
2009.  (Def.'s Statement of Facts ¶ 16; Compl. ¶ 18).

Brown also received an invitation to travel to DOI's Denver, Colorado field office in
February 2009.  (Compl. ¶ 17).  Once again, Brown submitted a travel request to MacPherson,
which MacPherson allegedly ignored, and Brown's travel to Denver was delayed until May
2009.  (Def.'s Statement of Facts ¶ 16).

While the record is unclear, it appears that at some point Brown amended the
aforementioned telework complaint to include allegations related to the travel delays (the
"Telework/Travel Complaint").  (*Id.* ¶ 15).  The EEOC eventually ruled that Brown failed to

"provide sufficient evidence to raise an inference of discrimination" with respect to the telework denial and travel delays, and the Telework/Travel Complaint was dismissed on the merits. (*Id.* ¶ 18).

      b.  <u>Forced Retirement</u>

The series of events which resulted in Brown's alleged forced retirement all transpired after Paulette Sanford-Brown was hired as branch chief in June 2009.  During her first meeting as Brown's supervisor, Sanford-Brown allegedly stated in front of Brown's peers that the front office was disappointed in Brown's performance and that she had grave concerns about his programs.  (Pl. Opp'n at 9; Pl. Opp'n Ex. C. (the "Thomas Decl.") at 105).  Michelle Thomas, another manager in Brown's office, also noted that Sanford-Brown was annoyed with her during the same meeting and made direct and potentially embarrassing remarks to her in front of other managers.  (Thomas Decl. at 106).  After the meeting, Brown e-mailed MacPherson about what Sanford-Brown had said, and MacPherson indicated that Brown should discuss matters with Sanford-Brown directly.  (Pl.'s Opp'n at 9).

Brown claims that later that summer, Sanford-Brown "blindsided" him by sending an e-mail to the Configuration Management team (while Brown was out of the office at a funeral) "notifying them that Brown would be relieved of his operational duties and those duties would be transferred to the National Operations Center in Denver, Colorado."  (Compl. ¶ 21).  That e-mail, dated August 21, 2009, read as follows:

> I wanted to start the dialogue to eliminate the confusion that still exists around roles and responsibilities within the National Configuration Management Program.  With the implementation of the MFE initiative, the operational component of NCM transferred to the NOC.  As such, WO released its contract resources and therefore, we no longer have the resources to assist us with the document review and final release process.

> Our role has now transitioned to updating and revising existing policy to
> incorporate ITIL standards and to access the CM program to ensure that proper
> controls are in place . . .
>
> Clearly, we still have some things to work out, but I guarantee will get there.
> I look forward to working with each of you to ensure a smooth transition of
> responsibilities.

(Pl. Opp'n Ex. C at 108-09).

Brown alleges that this email was tantamount to eliminating his position, as the duties to

be transferred accounted for 80-90% of his job responsibilities.  (Pl.'s Opp'n at 11).  According

to Defendant, the operational component of Brown's job was transferred pursuant to the agency-

wide Managing for Excellence initiative, which was designed to consolidate all agency

operational functions at the National Operations Center ("NOC") in Denver and consolidate all

policy functions in Washington, D.C.  (Def.'s Mot. at 2).  Defendant alleges that Sanford-Brown

believed that Brown's operational responsibilities should have been transferred to the NOC long

before she became his supervisor, and that the transfer should not have been a surprise to Brown.

(Pl. Opp'n Ex. E at 126-32).  In any event, Brown alleges that as a result of the transfer, he was

forced to retire.  (Compl. ¶ 21).

Brown submitted a second complaint to DOI's EEO Office with respect to his forced

retirement.  (Def.'s Statement of Facts ¶ 17).  His initial contact with an EEO official occurred

on September 3, 2009.  (Pl.'s Opp'n Ex. C at 66).  In the informal counseling process, the EEO

Office identified Brown's complaint as being based on race, sex, and age discrimination, as well

as reprisal for previously filing the Telework/Travel Complaint.  (Pl. Opp'n Ex. C at 66, 72, 80).

After the informal counseling process failed, on November 9, 2009, Brown filed a formal

complaint with the agency (the "Forced Retirement Complaint").  (*Id.* at 65).  In the Forced

Retirement Complaint, Brown checked the boxes for "age" and "reprisal" under the section titled

"Basis(es) for believing you were discriminated against: (Check one or more, and provide . . .

specific information)." (*Id.*)  Brown did not check the boxes for race or sex. (*Id.*).  The Forced

Retirement Complaint was assigned agency complaint number BLM-09-0472. (*Id.*).

On December 14, 2010, DOI issued its Final Agency Decision (the "Decision") with

respect to the Forced Retirement Complaint. (Pl's Opp'n Ex. F).  The agency found that Brown

"did not prove that management's testimony was unworthy of belief" and "did not produce any

evidence to demonstrate that his age or prior EEO activity were determinative factors in the

Agency's decision to transfer his operations responsibilities to the NOC." (*Id.* at 159).  DOI

therefore determined that Brown "was not subjected to discrimination on the bases of reprisal or

age." (*Id.*).  The Decision advised Brown that he had 30 days to appeal the decision to the Merit

Systems Protection Board (the "MSPB" or the "Board") or a federal district court. (*Id.* at 15).

Notably, while the Decision clearly discussed the merits of Brown's Forced Retirement

Complaint—complaint number 0472—it was incorrectly captioned with the case number from

the Telework/Travel Complaint—complaint number 004. (*Id.* at 1).

It does not appear that Brown took any action after receiving the Decision.

Approximately six months after DOI issued the Decision, it sent Brown a letter acknowledging

that the Decision was incorrectly captioned. (Pl.'s Opp'n Ex. G).  Brown responded a few weeks

later, requesting that DOI reissue the Decision with the correct case number. (Pl.'s Opp'n

Ex. H).  On August 31, 2011, DOI rejected that request, claiming that it "no longer has the

authority to reissue [the Decision] on appeal because jurisdiction over the matter now resides

with the MSPB." (*Id.*).

On September 30, 2011 (within 30 days of DOI's refusal to reissue the Decision but well

over 30 days after the original issuance of the Decision), Brown appealed to the MSPB.

(Pl.'s Opp'n Ex. I).  The MSPB rejected Brown's appeal on January 31, 2012, stating that it

lacked jurisdiction over the appeal because Brown had not provided any evidence that his retirement was involuntary.  (*Id.*).

Brown subsequently filed suit in this court on March 7, 2013.

## II.   LEGAL STANDARD

### a.   Subject-Matter Jurisdiction

"Federal district courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). "Subject-matter jurisdiction can never be waived or forfeited" because subject-matter jurisdiction "goes to the foundation of the court's power to resolve a case."  *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012); *Doe ex rel. Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996).

While Federal Rule of Civil Procedure 12(b)(1) authorizes a party to move to dismiss a lawsuit for lack of subject-matter jurisdiction, Federal Rule of Civil Procedure 12(h)(3) also provides, that if a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Thus, courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citation omitted).  "The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation," *id.* at 506, and a court must discharge its "independent obligation to determine whether subject-matter jurisdiction exists . . . before ruling on the merits."  *Nat'l Mining Ass'n v. Kempthorne*, 512 F.3d 702, 706 (D.C. Cir. 2008) (internal citation omitted) (internal quotation marks omitted); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("Courts do not usually raise claims or arguments on their

own. But federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."); *Doe ex rel. Fein*, 93 F.3d at 871 (holding that courts are "obliged to address" their own subject-matter jurisdiction "*sua sponte*").

      b.  <u>Motion for Summary Judgment</u>

      Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). Summary judgment may be rendered on a "claim or defense . . . or [a] part of each claim or defense." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination. An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Holcomb*, 433 F.3d at 895 (quoting *Liberty Lobby*, 477 U.S. at 248) (citation omitted). The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc., v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987).

      In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S.

at 255; *see also Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006) ("We view the evidence in the light most favorable to the nonmoving party and draw all inferences in its favor.").  The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The non-movant "is required to provide evidence that would permit a reasonable jury to find [in his favor]." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

  c.  Title VII and the ADEA

Claims under Title VII and the ADEA are governed by the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  *See Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004).  Under this framework, the plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 802.  Once the plaintiff establishes a *prima facie* case, the defendant must produce evidence that the adverse employment actions were taken for a legitimate, non-discriminatory reason.  *See Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1288 (D.C. Cir. 1998).  "Once the defendant has done so, the presumption . . . raised by the prima facie case is rebutted and drops from the case."  *Id.* at 1289 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507 (1993)) (internal quotation marks omitted).  To survive summary judgment, the plaintiff must then show that a reasonable jury could infer that the proffered legitimate reason was false and that defendant's actions were intended as discrimination from a "combination of (1) the plaintiff's *prima facie* case; (2) any evidence the

plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff." *Id.*

### III.   ANALYSIS

  a.   The Court's Subject-Matter Jurisdiction Over Brown's Forced Retirement Claims

The Civil Service Reform Act of 1978 (the "CSRA"), 5 U.S.C. § 1101 *et seq.*, creates "a framework for evaluating personnel actions against federal employees," providing employees with "graduated procedural protections depending on an action's severity." *Kloeckner v. Solis*, 133 S. Ct. 596, 600 (2012). "If (but only if) the action is particularly serious . . . the affected employee has a right to appeal the agency's decision to the MSPB." *Id.* (citing 5 U.S.C. §§ 1204, 7512, 7701). Agency actions which permit an employee to appeal a case to the MSPB include a removal (including constructive removals), a suspension for more than 14 days, a reduction in grade or pay, and a furlough. *Id.* at 600 n.1 (citing 5 U.S.C. § 7512). An appeal to the MSPB

> may merely allege that the agency had insufficient cause for taking the action under the CSRA; but the appeal may also or instead charge the agency with discrimination prohibited by another federal statute[.] . . . When an employee complains of a personnel action serious enough to appeal to the MSPB *and* alleges that the action was based on discrimination, [the employee] is said . . . to have brought a "mixed case."

*Id.* at 600-01 (citing 29 CFR § 1614.302) (emphasis in original).

There are "special procedures" governing mixed cases which are "different from those used when [a federal] employee either challenges a serious personnel action under the CSRA alone or attacks a less serious action as discriminatory." *Id.* at 601 (citations omitted). These special procedures permit an employee to proceed in a variety of ways. For instance, a federal employee "may first file a discrimination complaint with the agency itself, much as an employee challenging a personnel practice not appealable to the MSPB could do." *Id.* (citing 5 CFR

§ 1201.154(a); 29 CFR § 1614.302(b)).  If the agency decides against the employee, "the

employee may then either take the matter to the MSPB or bypass further administrative review

by suing the agency in district court."  *Id.* (citing 5 CFR § 1201.154(b); 29 CFR

§ 1614.302(d)(1)(i)).

> Alternatively, [an] employee may initiate the process by bringing [his or] her case
> directly to the MSPB, forgoing the agency's own system for evaluating
> discrimination charges.  If the MSPB upholds the personnel action (whether in the
> first instance or after the agency has done so), the employee . . . may request
> additional administrative process, this time with the EEOC, or else [the employee]
> may seek judicial review.

*Id.* (internal citations omitted).

"Section 7703 of the CSRA governs judicial review of the MSPB's decisions."  *Id.*

Section 7703(b)(1) sets forth the basic rule that petitions to review final MSPB decisions are to

be filed in the Court of Appeals for the Federal Circuit.  *Id.*  Section 7703(b)(2) then provides the

exception to that basic rule—*i.e.*, that "[c]ases of discrimination subject to the provisions of

section 7702 . . . [are to] be filed under the enforcement sections" of certain specified

antidiscrimination statutes (including the Civil Rights Act and the ADEA), all of which authorize

suit in federal district court.  *Id.*  Section 7702(a)(1) clarifies the meaning of the phrase "cases of

discrimination" in § 7703(b)(2)'s exception:

> [I]n the case of any employee . . . who—
>
>> (A) has been affected by an action which the employee . . . may appeal to
>> the Merit Systems Protection Board, and
>>
>> (B) alleges that a basis for the action was discrimination prohibited by [the
>> aforementioned specified antidiscrimination statutes],
>
> . . .
>
>> the Board shall, within 120 days of the filing of the appeal, decide
>> both the issue of discrimination and the appealable action in
>> accordance with the Board's appellate procedures[.]

*Id.* at 601-02 (citing 5 U.S.C. § 7702(a)(1)).  The "cases of discrimination" referenced in

§ 7703(b)(2)'s exception are therefore "mixed cases, in which an employee challenges as

discriminatory a personnel action appealable to the MSPB."  *Id.* at 602.

In *Kloeckner*, the Supreme Court held, in a unanimous opinion, that a "federal employee

who claims that an agency action appealable to the MSPB violates an antidiscrimination statute

listed in § 7702(a)(1)"—*i.e.*, an employee who brings a "mixed case"—"should seek judicial

review in district court, not in the Federal Circuit," when the MSPB decided the case on

procedural grounds or on the merits.  133 S. Ct. at 607.  Notably for purposes of the instant case,

however, the *Kloeckner* Court did not address whether jurisdictional dismissals by the MSPB

should go to the Federal Circuit or to federal district court.  *See Conforto v. Merit Sys. Prot. Bd.*,

713 F.3d 1111, 1117 (Fed. Cir. 2013).

The D.C. Circuit has not yet addressed whether *Kloeckner* mandates that mixed cases

dismissed by the MSPB solely on jurisdictional grounds should be reviewed in federal district

court.  In *Conforto*, however, the Federal Circuit held that the "statutory text, the Court's

rationale in *Kloeckner*, [the Federal Circuit's] own prior decisions, and the decisions of other

courts all indicate that an appeal from the Board's dismissal for lack of jurisdiction belongs in"

the Federal Circuit.  713 F.3d at 1117.  The Federal Circuit reasoned that because an employee

may appeal to the MSPB "only if the employee's claim is within the Board's appellate

jurisdiction, the plain import of this statutory language is that a purported mixed case appeal is

reviewed by the district court only if the Board has jurisdiction to decide the appeal from the

adverse action in issue."  *Id.* at 1118; *see also id.* (noting that the statute "requires that the Board

actually have jurisdiction over the employee's claim, not merely that the employee allege Board

jurisdiction").

The Federal Circuit concluded that because the employee's claim in *Kloeckner* was barred under a procedural rule, the Supreme Court "reversed only the line of authority holding that 'mixed cases' dismissed by the Board on procedural grounds were appealable" to the Federal Circuit.  *Id.*  In support of its conclusion, the *Conforto* court noted that the Supreme Court had granted certiorari in *Kloeckner* in order "to resolve a Circuit split on whether an employee seeking judicial review should proceed in the Federal Circuit or in a district court when the MSPB has dismissed her mixed case on procedural grounds."  *Id.* (citing *Kloeckner*, 133 S. Ct. at 603) (internal quotation marks omitted).  The *Conforto* court also pointed out that all of the courts of appeal that had addressed the issue prior to the *Kloeckner* decision had unanimously agreed that the Federal Circuit "is the appropriate forum for jurisdictional dismissals [from the MSPB], and therefore there was no circuit split for the Supreme Court to resolve on that point."  *Id.*  The *Conforto* court further noted that the Supreme Court had reiterated several times throughout its *Kloeckner* opinion that it was deciding only the question of "whether judicial review of *procedural* dismissals of mixed case appeals should go to the Federal Circuit," and that, "[b]y contrast, the Court never mentioned *jurisdictional* dismissals, nor did it suggest that the rule it adopted applied to any cases falling outside the Board's jurisdiction."  *Id.* at 1118-19 (citing *Kloeckner*, 133 S. Ct. at 600, 602–07) (emphasis added).

The *Conforto* court therefore concluded that only the Federal Circuit had "jurisdiction to review a determination by the Board that it lacks statutory jurisdiction over an employee's appeal."  *Id.* at 1116; *see also id.* at 1120-21 (holding that where "an employee elects to proceed by appealing to the Merit Systems Protection Board but the Board concludes it does not have jurisdiction over the employee's appeal," then "any appeal from that decision is to" the Federal Circuit).

In *Conforto*, the MSPB found that the plaintiff's retirement was voluntary and therefore held "that it lacked jurisdiction over her claim of constructive removal." 713 F.3d at 1121. Therefore, the Federal Circuit found that it, and not any federal district court, had jurisdiction to decide the plaintiff's appeal, because "the exception to [its] jurisdiction described in sections 7702(a) and 7703(b)(2) does not apply." *Id.* Here, too, the MSPB determined that it did not have jurisdiction over the claims in Brown's Forced Retirement Complaint because Brown "had failed to establish that a reasonable person would have been compelled to retire." (Def.'s Statement of Facts ¶ 24; *see also* Def.'s Brief on Subject-Matter Jurisdiction at 2 (noting that the MSPB "dismissed the appeal for <u>lack of jurisdiction</u> because the retirement was voluntary and Plaintiff had failed to make a non-frivolous allegation that his 'working conditions were made so difficult or intolerable that a reasonable person in his position would have felt compelled to resign or retire'") (emphasis in original); Pl.'s Brief on Subject-Matter Jurisdiction at 2 (acknowledging that "the MSPB concluded that it did not have jurisdiction over" the claims in Brown's Forced Retirement Complaint). Thus, because Brown seeks review of the MSPB's dismissal of his forced retirement claims for lack of jurisdiction, any petition for review of those claims must be brought before the Federal Circuit, not this court.

Accordingly, the claims in Counts I, II and III predicated on Brown's alleged forced retirement are hereby dismissed for lack of subject-matter jurisdiction.

      b.  Whether Brown Suffered Adverse Employment Actions When His
          <u>Request to Telework was Denied and His Requested Travel was Delayed</u>

Aside from his now-dismissed forced retirement claims, Brown also alleges two other categories of discriminatory actions: a denial of his request to telework, and the delay of two trips that he requested to take to DOI field offices. (Compl. ¶¶ 9-18). Defendant argues that the

remaining purported acts of discrimination relating to the telework denial and the travel delays

do not rise to the level of an adverse employment action.  (Def.'s Mot. at 2-3).

"To state a claim for age discrimination . . . a plaintiff must allege that he belonged to the

protected age group of 40 years and older and that he suffered an adverse employment action

because of his age." *Wilson v. LaHood*, 815 F. Supp. 2d 333, 338 (D.D.C. 2011), *aff'd sub nom.*

*Wilson v. U.S. Dep't of Transp.*, 11-5323, 2013 WL 1164130 (D.C. Cir. Mar. 4, 2013).  In

addition, a valid retaliation claim requires a plaintiff to establish that: (i) he participated in a

protected activity; (ii) he suffered an adverse action by the employer; and (iii) there is a causal

link between the participation and the adverse action.  *See McKenna v. Weinberger*, 729 F.2d

783, 790 (D.C. Cir. 1984).

### i.   Denial of Request to Telework

The portions of Brown's race and sex discrimination claim (Count I) and age

discrimination claim (Count II) premised on MacPherson's denial of his request to telework must

be dismissed because Brown has not provided any evidence that he suffered an adverse

employment action.  An adverse employment action is "a significant change in employment

status, such as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing significant change in benefits." *Taylor v. Small*, 350 F.3d

1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761

(1998)) (internal quotation marks omitted).  If an action is not presumptively adverse, such as

hiring and firing, "[a]n employee must experience materially adverse consequences affecting the

terms, conditions, or privileges of employment or future employment opportunities such that a

reasonable trier of fact could find objectively tangible harm." *Douglas v. Donovan,* 559 F.3d

549, 552 (D.C. Cir. 2009) (internal quotation marks and citations omitted).  "Not everything that

makes an employee unhappy is an actionable adverse action." *Broderick v. Donaldson,* 437 F.3d

1226, 1233 (D.C. Cir. 2006) (quoting *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001))

(internal quotation marks omitted).  "'[P]urely subjective injuries,' such as dissatisfaction with a

reassignment, public humiliation, or loss of reputation, are not adverse actions[.]" *Holcomb,* 433

F.3d at 902 (quoting *Forkkio v. Powell,* 306 F.3d 1127, 1130–31 (D.C. Cir. 2002)).

Courts in this and other jurisdictions have repeatedly held that denial of a request to

telework on its own does not constitute an adverse employment action. *See*, *e.g.*, *Byrd v.

Vilsack*, 931 F. Supp. 2d 27, 41 (D.D.C. 2013) ("the denial of an employee's request to work

from home on a few occasions, without more, does not constitute an adverse employment action

under Title VII"); *Beckham v. Nat'l R.R. Passenger Corp.,* 736 F. Supp. 2d 130, 149 (D.D.C.

2010) ("Being denied the ability to work from home on, at most, three occasions is a minor

annoyance, not an adverse action."); *Ng v. LaHood*, 952 F. Supp. 2d 85, 96 (D.D.C. 2013);

*Bright v. Copps,* 828 F. Supp. 2d 130, 148–49 (D.D.C. 2011); *Brockman v. Snow*, 217 F. App'x

201, 206 (4th Cir. 2007) ("A determination affecting [Plaintiff's] ability to work where she

chooses is not the type of ultimate decision that this court has required for a prima facie case of

discrimination."); *Homburg v. UPS,* No. 05–2144, 2006 WL 2092457, at *9 (D. Kan. July 27,

2006) ("[D]istrict courts . . . have consistently held that the denial of a request to work from

home is not adverse employment action.") (collecting cases); *Seldon v. Nat'l R.R. Passenger

Corp.*, No. 05-4165, 2007 WL 3119976, at *3 (E.D. Pa. Oct. 24, 2007) (collecting cases); *Melton

v. Farmers Ins. Grp.*, 619 F. Supp. 2d 1131, 1139 (W.D. Okla. 2008); *but see Weng v. Solis*, 960

F. Supp. 2d 239, 249 (D.D.C. 2013) (holding that plaintiff's *removal* from a program that had

allowed plaintiff "to work from home one day a week . . . constituted an adverse employment

action" because a "reasonable fact finder could find that this materially affected the terms, conditions, or privileges of [plaintiff's] employment") (internal quotation marks omitted).

The Court agrees with the cited opinions that a denial of a request to telework, without more, does not rise to the level of an adverse employment action, as it does not involve "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Taylor*, 350 F.3d at 1293.

> ii. *Delayed Travel*

Brown's retaliation claim (Count III) is partially based on what Brown describes as MacPherson's "denials" of his requests to travel to Portland and Denver in October 2008 and February 2009, respectively. (Compl. ¶¶ 17, 39). Brown alleges that these travel denials constitute adverse employment actions because

> he was prevented from performing the required duties of his position and was unable to create a current Handbook and Manual and other policies. This further impacted his duties by preventing him from ensuring program continuity and properly advising field offices on the current policies and procedures. As a result, Mr. Brown could not properly perform a substantial portion of the required duties of his position, including overseeing the implementation of the appropriate policies and procedures in field offices.

(Pl.'s Opp'n 27-28) (internal citations omitted).

Brown's claims fall short for several reasons. He fails to explain how the delayed visits to the Portland and Denver field offices prevented him from developing department policies. He also fails to explain why he could not advise field offices of current policies and procedures by e-mail or telephone, or why in-person meetings in those field offices were required. He does not allege that he was required to visit all field offices as part of his job responsibilities, or why visiting these two field offices in particular was critical.

Most importantly, it does not appear that MacPherson ever affirmatively denied Brown's requests—he simply failed to timely respond. Even if MacPherson had initially denied the requests, it is undisputed that Brown did in fact travel to Portland and Denver, albeit belatedly. (Compl. ¶ 18; Def.'s Statement of Facts ¶ 16). "A decision that is later reversed does not have an objectively adverse effect on a plaintiff warranting relief under Title VII." *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 74 (D.D.C. 2007) (finding no adverse action where plaintiff's planned travel was canceled but later reauthorized); *see also Arnold v. Jewell*, No. 05-1475, 2013 WL 6730918, at *6 (D.D.C. Dec. 23, 2013) ("delaying Arnold's work-related travel 'did not have a materially adverse effect on the terms or conditions of plaintiff's employment—[Arnold] simply carried out [her] work responsibilities at the time . . . dictated by [her] supervisor[.]'") (citation omitted). Thus, even if MacPherson's initial alleged denials of Brown's travel requests did constitute adverse employment actions—which is far from clear—"[a]n employer may cure an adverse employment action . . . before that action is the subject of litigation." *Taylor*, 350 F.3d at 1293. Brown does not allege that traveling to Portland and Denver months later than he had hoped had any adverse impact on the "terms, conditions, or privileges of [his] employment," or had any adverse impact at all. *Douglas,* 559 F.3d at 552. Moreover, nowhere does he explain why the timing of the visits to the field offices was important.

Thus, the claim in Count III predicated on Brown's delayed travel is hereby dismissed.

## IV. CONCLUSION

For the foregoing reasons, (i) the claims in Counts I, II and III predicated on Plaintiff's alleged forced retirement are dismissed for lack of subject-matter jurisdiction; and (ii) Defendant's motion to dismiss or in the alternative for summary judgment is granted with respect to the claims in Counts I and II predicated on the denial of Plaintiff's request to telework

and the claim in Count III predicated on Plaintiff's delayed travel.  An appropriate Order

accompanies this Memorandum Opinion.


Date:  September 29, 2015


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge